THE BANK OF MONTREAL ET AL. V. THE J. E. POTTS
SALT & LUMBER COMPANY ET AL.

*Corporations—Mortgage—Preferences—Assignment for benefit of
creditors.*

1. It is not in this State unlawful for a corporation, although insolvent, to give preferences to its creditors by way of mortgage; citing *Town v. Bank*, 2 Doug. 530; *Turnbull v. Lumber Co.*, 55 Mich. 396; *Kendall v. Bishop*, 76 Id. 634.

2. It is not the law of this State that, as soon as a corporation becomes insolvent, its directors become trustees for all of its creditors alike, in such a sense as to prevent their giving valid security by way of preference to a stockholder or director.

3. The rule in this State has been established since the case of *Town v. Bank*, 2 Doug. 530, that a corporation may, in the absence of legislative restriction, deal with its property precisely as an individual may, and may prefer one creditor over another; and hence its assets do not become a trust fund, for *pro rata* distribution among all of its creditors, until steps are taken under the "Winding Up Act" (How. Stat. chap. 282).

4. A chattel mortgage executed by a corporation to secure certain preferred creditors cannot be held to constitute an assignment for the benefit of creditors, where, at the time of its execution, the officers of the corporation had no purpose of making such an assignment thereafter, and the mortgage does not, by its terms, create any trust, or provide for any transfer to the mortgagee for any purpose other than to secure the payment of honest debts; citing *Sheldon v. Mann*, 85 Mich. 265; *Warner v. Littlefield*, 89 Id. 329.

Appeal from Wayne. (Hosmer, J.) Submitted on briefs February 5, 1892. Decided February 19, 1892.

Bill to foreclose a chattel mortgage. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*Frederick T. Sibley* (*John H. Bissell* and *Otto Kirchner*, of counsel), for complainants, contended for the doctrine of the opinion, citing the authorities therein cited.

*Bowen, Douglas & Whiting,* for defendants, contended:

1. The J. E. Potts Salt & Lumber Company, at the time of the execution of these mortgages, was wholly insolvent; it had no hope of meeting its maturing indebtedness, or of continuing its business, and had, when the determination to give these mortgages was completed, ceased to be a going concern. A person is deemed insolvent who at the time is unable to pay his debts as they become due in the ordinary course of business; citing *Sterrett v. Bank,* 46 Hun, 22; *Toof v. Martin,* 13 Wall. 40; *Buchanan v. Smith,* 16 Id. 277; *Cunningham v. Norton,* 125 U. S. 77; *Castleberg v. Wheeler,* 68 Md. 266; and in its popular and general sense, and in the sense of the ordinary insolvency statutes, insolvency is used to denote the insufficiency of the entire property and assets of an individual to pay his debts; citing *Van Riper v. Poppenhausen,* 43 N. Y. 68; *Dutcher v. Bank,* 59 Id. 5; *Paulding v. Steel Co.,* 94 Id. 334.

2. When a corporation becomes insolvent, and ceases to be a going concern, it is not legally competent to give preferences, by way of mortgage or otherwise, to any of its creditors at the expense of others, but it must distribute its assets *pro rata* among them all; citing *Williams v. Jones,* 23 Mo. App. 132; *Woolen Mill Co. v. Kampe,* 38 Id. 229; *State v. Brockman,* 39 Id. 131; *Rouse v. Bank,* 46 Ohio St. 493; *Graham v. Railroad Co.,* 102 U. S. 161; *Sawyer v. Hoag,* 17 Wall. 620; *Marr v. Bank,* 4 Coldw. 471; *Eppright v. Nickerson,* 78 Mo. 490; *Chew v. Ellingwood,* 86 Id. 260; *Hightower v. Mustian,* 8 Ga. 506; Mor. Corp. §§ 579, 581, 582; Taylor, Corp. § 759; Wait, Insolv. Corp. § 162.

3. Preferences, by way of mortgage or otherwise, given by an insolvent corporation to secure indebtedness due its directors, or that on which its directors or any of them are liable, are invalid, and will be set aside by a court of equity. The directors of an insolvent corporation are regarded as trustees, not only for the benefit of the stockholders, but for the benefit of all the creditors, and in the state of insolvency they are not permitted to avail themselves of the knowledge of the condition of the company, which they as trustees alone possess, and execute preferences in favor of themselves; citing *Howe v. Tool Co.,* 44 Fed. Rep. 231; *Haywood v. Lumber Co.,* 64 Wis. 646.

4. The mortgages, considered in the light of all of the surrounding circumstances, and taken in connection with the action of the secured creditors in immediately filing a bill and procuring the appointment of a receiver by a consent order, constituted, in

the eyes of the law, an assignment for the benefit of creditors, with illegal preferences, and as such are void.

5. While it is true that our assignment statute does not forbid necessary transfers or securities by individuals which are not in themselves general assignments (*Rollins v. Van Baalen*, 56 Mich. 610; *Root v. Potter*, 59 Id. 498; *Root v. Harl*, 62 Id. 420; *Sweetzer v. Higby*, 63 Id. 13), it is equally true that the statute can never be used for the purpose of aiding in defrauding creditors; and while it has been held that a debtor may prefer a creditor by a chattel mortgage, and may in fact give several mortgages, which will not be treated as an assignment (*Sheldon v. Mann*, 85 Mich. 265); yet whether the acts of the debtor in giving such mortgages constitute such an assignment depends entirely upon the circumstances of each particular case; citing *Kendall v. Bishop*, 76 Mich. 634; and where the facts and circumstances all tend to show that the result intended to be reached is to put the debtor's property beyond his control, and to create, either expressly or impliedly, a trust, it makes it in effect a general assignment. It is not the form of the instrument or instruments, but the *effect* which they, together with the surrounding circumstances, produce, that must be considered in deciding this question; citing *Kendall v. Bishop*, 76 Mich. 634; *Lucas v. Railroad Co.*, 32 Penn. St. 458; *Watson v. Bagaley*, 12 Id. 164; and the tendency of all recent decisions, both in state and federal courts, is in support of this contention; citing *Burrows v. Lehndorff*, 8 Iowa, 96; *Cole v. Dealham*, 13 Id. 551; *Van Patten v. Burr*, 52 Id. 518; *Bank v. Crittenden*, 66 Id. 237; *Bonns v. Carter*, 20 Neb. 566; *Straw v. Jenks*, 6 Dak. 414; *Collier v. Wood*, 85 Ala. 91; *Wallace v. Wainwright*, 87 Penn. St. 263; *White v. Cotzhausen*, 129 U. S. 329; *Martin v. Hausman*, 14 Fed. Rep. 160; *Perry v. Corby*, 21 Id. 737; *Clapp v. Nordmeyer*, 25 Id. 71; *Freund v. Yaegerman*, 26 Id. 812.

MONTGOMERY, J. On the 24th day of November, 1890, the J. E. Potts Salt & Lumber Company was indebted to the complainants in divers sums, aggregating about $560,000, and on that date executed a chattel mortgage to secure this indebtedness, and at the same time executed a real-estate mortgage to the same parties, securing the same demands. On the 28th of November a meeting of the creditors secured by these instruments was had, and it was decided to take steps to foreclose

the mortgages, and have a receiver appointed. The present bill was filed for that purpose. The defendants Harmon and Tisdale were appointed receivers. They subsequently petitioned to be made parties defendant to the suit, and, this petition being granted, filed an answer in the cause. In the mean time, and immediately following upon the appointment of the receivers, the lumber company made a general assignment for the benefit of its creditors. The answer of the receivers admits the execution of the mortgages; leaves complainants to their proofs as to the amounts due them respectively; but raises, by appropriate averments, the propositions of fact and law stated in the defendants' brief, as follows:

1. That the J. E. Potts Salt & Lumber Company, at the time of the execution of these mortgages and for a long time prior thereto, was wholly insolvent; that it had no hope of meeting its maturing indebtedness or continuing its business, and had, when the determination to give these mortgages was completed, ceased to be a going concern.

2. That when a corporation so becomes insolvent, and ceases to be a going concern, it is not legally competent to give preferences, by way of mortgage or otherwise, to any of its creditors to the exclusion of others; that it must distribute its assets *pro rata* among them all, and that the assets of an insolvent corporation become a trust fund for the benefit of all creditors alike.

3. That, as soon as a corporation becomes insolvent, its directors become trustees for all the creditors alike, and that this fiduciary relation will not allow them to prefer a director or stockholder, or obtain any advantage over other creditors; and that any attempted preference, by way of mortgage or otherwise, is invalid, and should be set aside by a court of equity.

4. That the mortgages executed by the Potts Salt & Lumber Company on the 24th day of November, 1890, taken in connection with the action of the secured creditors in procuring the appointment of receivers by a consent order, constituted, in the eyes of the law, an assignment for the benefit of creditors, with illegal preferences.

These propositions state very fairly and clearly the questions presented in the record, with the exception that at the time the mortgages were given the defendant corporation had not ceased to be a going concern, nor are we satisfied that its officers had abandoned hope of continuing business.

1. It is not in this State unlawful for a corporation, although insolvent, to give preferences to its creditors by way of mortgage. *Town v. Bank*, 2 Doug. 530; *Kendall v. Bishop*, 76 Mich. 634; *Turnbull v. Lumber Co.*, 55 Id. 396.

In the case of *Town v. Bank* certain creditors were preferred by the corporation in a common law assignment. It was held that the corporation had the same right to prefer one creditor over another that an individual has.

In *Turnbull v. Lumber Co.* it appeared that the corporation was converting its assets into money as rapidly as possible, and paying only certain of the creditors. The corporation was at the time insolvent. Speaking of these acts of the corporation, Mr. Justice CHAMPLIN said:

"It being insolvent, such action must result in the payment of some to the exclusion of others. Such conduct, * * * although legal and proper before a bill is filed against it by a judgment creditor whose execution is returned unsatisfied, becomes improper after the filing of such bill. From that time on, no unsecured creditor is entitled to a preference over others."

In the case of *Hills v. Furniture Co.*, 23 Fed. Rep. 434, a mortgage had been given by an insolvent corporation to secure certain creditors. It was said:

"It does not affect the question if the company could never pay its debts in full, for the legal right of an insolvent debtor to secure one or more creditors, in preference to others, where no fraud is intended, is settled in Michigan by many decisions."

2. Nor is it the law of this State that, as soon as a corporation becomes insolvent, the directors of the corporation become trustees for all the creditors alike, in such sense as to prevent their giving valid security by way of preference to one of the stockholders or directors. We are aware that the decisions in the various states are not uniform as to the question, and that a number of very eminent text-writers have deprecated a state of the law which admits of such preferences. But, to adopt the language of Dillon, J., in *Buell v. Buckingham*, 16 Iowa, 284, this condition of the law "may constitute a good legislative reason for giving priority to outside creditors, but the legislature must furnish the remedy."

In the case referred to it was held that being an officer of the corporation did not deprive Buell of the right to enter into competition with the other creditors, and run a race of diligence with them. See, also, *Hallam v. Hotel Co.*, 56 Iowa, 179 (9 N. W. Rep. 111); *Garrett v. Plow Co.*, 70 Id. 697 (29 N. W. Rep. 395); *Smith v. Skeary*, 47 Conn. 54; *Catlin v. Bank*, 6 Id. 233; *Banking Co. v. Claghorn*, 1 Speer, Eq. 545; *Bank v. Whittle*, 78 Va. 739; *Leavitt v. Mining Co.*, 3 Utah, 265 (1 Pac. Rep. 356); *Whitwell v. Warner*, 20 Vt. 444; *Holt v. Bennett*, 146 Mass. 437 (16 N. E. Rep. 5); *Oil Co. v. Marbury*, 91 U. S. 587; *Wilkinson v. Bauerle* (N. J. Err. & App.), 7 Atl. Rep. 514.

The rule in this State has, we think, been established since the case of *Town v. Bank*, 2 Doug. 530, that a corporation may, in the absence of legislative restriction, deal with its property precisely as an individual may, and may prefer one creditor over another; and hence that the assets do not become a trust fund, for *pro rata* distribution among all its creditors, until such time as steps are taken under the "Winding Up Act," chapter 282, How.

Stat. This is the substance of the rule stated in both *Town v. Bank* and *Turnbull v. Lumber Co.* And in the later case of *Kendall v. Bishop*, 76 Mich. 634, a mortgage had been given to secure the directors of the corporation, and to secure paper upon which they were indorsers. The question under consideration was fully discussed in the briefs of counsel, and it was said by Mr. Justice CAMPBELL:

"There seems to be no reason why one honest creditor should be on a worse footing than another, and we do not find in our law any such distinction."

3. This mortgage cannot be held to constitute an assignment for the benefit of creditors. It does not appear that the officers of the corporation had at the time of its execution any purpose to make a general assignment thereafter, much less that the creditors secured by it had any knowledge of any such purpose; nor does the mortgage, by its terms, create any trust, or provide for any transfer to the mortgagees for any purpose other than to secure the payment of honest debts. The question is ruled by *Sheldon v. Mann*, 85 Mich. 265, and *Warner v. Littlefield*, 89 Id. 329.

The decree of the court below will be affirmed, with costs.

The other Justices concurred.